AES:AL/AAS/ICR/JGH
F. #2017R02031

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

          – against –

LAFARGE S.A. and
LAFARGE CEMENT SYRIA S.A.,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

PLEA AGREEMENT

Docket No. 22-CR-444 (WFK)

The United States of America, by and through the United States Attorney's Office for the Eastern District of New York (the "Office") and the National Security Division of the United States Department of Justice ("NSD"), and the defendants Lafarge S.A. ("Lafarge") and Lafarge Cement Syria S.A. ("LCS" and collectively with Lafarge, the "Defendants" or the "Companies"), by and through their undersigned attorneys, and through their authorized representatives, pursuant to authority granted by the Board of Directors of Lafarge (the "Board"), hereby enter into this plea agreement (the "Agreement"). The Defendants agree to waive their right to grand jury indictment and their right to challenge venue in the United States District Court for the Eastern District of New York and to plead guilty to a one-count criminal information (the "Information"), pursuant to the terms of the Agreement, under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The terms and conditions of the Agreement are as follows:

1



COURT'S
EXHIBIT NO. 4
IDENTIFICATION/EVIDENCE
DKT.# 22 CR444
DATE: 10/18/22.
PENGAD 800-631-6989

TERMS OF THE DEFENDANTS' OBLIGATIONS UNDER THE AGREEMENT

1.      Except as otherwise provided in Paragraphs 14 and 15 below in connection with the Defendants' cooperation obligations, the Defendants' obligations under the Agreement shall last and be effective for a period beginning on the date on which the Information is filed and ending three years from the date on which the Information is filed (the "Term"). The Defendants agree, however, that, in the event the Office and NSD determine, in their sole discretion, that the Defendants have failed specifically to perform or to fulfill completely each of the Defendants' obligations under this Agreement, extensions of the Term may be imposed by the Office and NSD, in their sole discretion, for up to a total additional period of one year. Any extension of the Term extends all terms of this Agreement for an equivalent period.

THE DEFENDANTS' AGREEMENT

2.      The Defendants agree to plead guilty to the Information, which charges the Defendants with one count of conspiracy to provide material support to one or more foreign terrorist organizations ("FTOs"), in violation of 18 U.S.C. § 2339B(a)(1). The Defendants further agree to persist in that plea through sentencing and, as set forth below, to cooperate fully with the Office and NSD in their investigation into the conduct described in, or related to the conduct described in, this Agreement, the Information and the Statement of Facts attached hereto as Attachment A (the "Statement of Facts").

3.      The Defendants understand that, to be guilty of this offense, the following essential elements must be satisfied: An unlawful agreement existed between each Defendant and one or more other persons to provide material support and resources, as defined in Title 18, United States Code, Section 2339A(b)(1), to the Islamic State of Iraq and al-Sham ("ISIS") and

2

al-Nusrah Front ("ANF"), which at all relevant times were designated by the Secretary of State as FTOs, pursuant to Section 219 of the Immigration and Nationality Act, knowing that the FTOs were designated foreign terrorist organizations or that the FTOs had engaged and were engaging in terrorist activity and terrorism, and after the conduct required for this offense occurred, the Defendants were brought into and found in the United States, the offense occurred in part within the United States, the offense occurred in and affected interstate and foreign commerce, or the Defendants conspired with a national of the United States (as defined in section 101(a)(22) of the Immigration and Nationality Act).

4.      The Defendants understand and agree that this Agreement is among the Office, NSD and the Defendants, and does not bind any other division or section of the Department of Justice or any other federal, state, local or foreign prosecuting, administrative or regulatory authority. Nevertheless, the Office and NSD will bring this Agreement, the nature of the Defendants' conduct and the nature and quality of any cooperation and/or remediation by the Defendants, as well as that of their direct or indirect parents, affiliates, subsidiaries and joint ventures, to the attention of other law enforcement, regulatory and debarment authorities if requested by the Defendants.

5.      The Defendants agree that this Agreement will be executed by an authorized corporate representative, pursuant to a resolution duly adopted by the Board, in the form attached to this Agreement as Attachment B ("Certificate of Corporate Resolutions"), authorizing the Defendants to enter into this Agreement and take all necessary steps to effectuate this Agreement, and that the signatures on this Agreement by the Defendants and their counsel are authorized by the Board.

6.      Lafarge agrees that it has the full legal right, power and authority to enter into and perform all of its obligations under the Agreement, and that an authorized representative of Lafarge is doing so for LCS.

7.      The Office and NSD enter into this Agreement based on the individual facts and circumstances presented by this case, including:

a.      The seriousness and pervasiveness of the offense conduct, which implicated executives at high levels of both Defendants, occurred in multiple jurisdictions and involved a conspiracy to pay millions of dollars for the benefit of ISIS and ANF;

b.      The Defendants' clear demonstration of recognition of, and affirmative acceptance of responsibility for, their criminal conduct;

c.      The Defendants' lack of prior criminal history;

d.      The fact that the Holcim Group ("Holcim"), after acquiring the Defendants on or about July 10, 2015, and during the approximately seven months prior to the emergence of public allegations of misconduct in Syria, did not conduct post-acquisition due diligence of the Defendants' operations in Syria;

e.      The decision by Holcim's Board of Directors, after learning of the relevant criminal conduct, to undertake an internal investigation into the relevant criminal conduct carried out by external U.S. legal counsel, which resulted in a public announcement in April 2017 that the defendants had used intermediaries in Syria to make payments for the benefit of "terrorist groups designated by the US and the EU";

f.      The fact that the criminal conduct uncovered by the internal investigation was not voluntarily self-reported to the Department of Justice, and that the Office

and NSD have determined that they did not receive timely and full cooperation with their investigation;

g.      The decision by Holcim executives to timely separate from all remaining personnel employed by the Defendants found to be involved in or responsible for the offense conduct;

h.      The fact that culpable individuals responsible for the Defendants' criminal conduct are subject to effective prosecution in another jurisdiction;

i.      The Defendants' agreement to cooperate with the Office and NSD in any ongoing investigation as described in Paragraphs 14 and 15 below;

j.      The improvements in Lafarge's compliance program since the time of the criminal conduct, and the commitment to maintain and, where appropriate, further improve that program in accordance with the requirements set forth in Attachment C; and

k.      Lafarge's commitment, in Attachment B, to guarantee the Defendants' compliance with the terms of this Agreement.

8.      To address any deficiencies in its internal accounting controls, policies and procedures, Lafarge represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal accounting controls, policies and procedures, regarding compliance with 18 U.S.C. § 2339B and other applicable anti-terrorism laws.  Where necessary and appropriate, Lafarge agrees to modify its existing compliance programs, including internal controls, compliance policies and procedures, in order to ensure that it maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records and accounts; and (b) a rigorous anti-terrorism and sanctions compliance program

5

that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of 18 U.S.C. § 2339B and other applicable anti-terrorism laws and trade sanctions. The compliance programs, including the internal accounting controls systems, will include, but not be limited to, the minimum elements set forth in Attachment C to this Agreement.

9.      Lafarge represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of 18 U.S.C. § 2339B and other applicable anti-terrorism laws throughout its operations, including those of its affiliates and joint ventures under Lafarge's control, including, but not limited to, the minimum elements set forth in Attachment C to this Agreement, and that it will ensure that its agents and contractors and subcontractors whose responsibilities include activities carrying a high risk of contact with foreign terrorist organizations maintain similar programs, and that it will report to the Office and NSD as set forth in Attachment D to this Agreement.

10.      Accordingly, after considering Paragraphs 7, 8 and 9 above, the Office and NSD have determined that a guilty plea by each Defendant to the charge in the Information, a total financial penalty of $777.78 million, consisting of a total criminal fine of $90.78 million and forfeiture of $687 million, and a three-year term of probation, is sufficient but not greater than necessary to achieve the purposes described in 18 U.S.C. § 3553.

11.      Based on the Defendants' remediation, including particularly the wholesale replacement of legacy Lafarge's compliance program and internal controls with Holcim's, and the enhancements to Holcim's compliance program and internal controls following Holcim's discovery of the misconduct, and based on the Office's and NSD's assessment of the current state of Lafarge's compliance program and internal controls, including

6

ensuring that its compliance programs will satisfy the minimum elements set forth in Attachment C to this Agreement ("Corporate Compliance Reporting"), and the Defendants' risk profile, including Lafarge's agreement to report to the Office and NSD as set forth in Attachment D to this Agreement ("Reporting Requirements"), the Office and NSD have determined that the appointment of an independent compliance monitor is unnecessary.

12.    The Defendants agree to abide by all terms and obligations of the Agreement as described herein, including, but not limited to, the following:

a.    to plead guilty as set forth in the Agreement;

b.    to abide by all sentencing stipulations contained in the Agreement;

c.    to appear, through their duly appointed representatives, as ordered for all court appearances, and to obey any other ongoing court order in this matter, consistent with all applicable U.S. and foreign laws, procedures and regulations;

d.    to commit no further crimes;

e.    to be truthful at all times with the Court;

f.    to pay the applicable fine, forfeiture and special assessment;

g.    to cooperate fully with the Office and NSD as described in Paragraphs 14 through 15;

h.    to implement or maintain a compliance program as described in Paragraphs 8 and 9 and Attachment C; and

i.    to report to the Office and NSD once per year during a term of three years, beginning on the date of sentencing and subject to extension under the terms of this Agreement, regarding remediation and implementation of the compliance measures described in Attachment C, prepared in accordance with Attachment D of this Agreement.

13.    Except as may otherwise be agreed by the parties in connection with a particular transaction, the Defendants agree that in the event that, during the Term of the Agreement, they undertake any change in corporate form, including if they sell, merge or transfer business operations that represent greater than 10% of Lafarge's annual consolidated revenue in the fiscal year preceding the sale, merger or transfer, whether such sale is structured as a sale, asset sale, merger, transfer or other change in corporate form, they shall include in any contract for sale, merger, transfer or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.  In any such transaction, the purchaser or successor in interest must also agree in writing that the Office's and NSD's ability to declare a breach under this Agreement is applicable in full force to that entity.  The Defendants agree that the failure to include these provisions in the transaction will make any such transaction null and void.  The Defendants shall provide notice to the Office and NSD at least 30 days prior to undertaking any such sale, merger, transfer or other change in corporate form.  If the Office or NSD notifies the Defendants prior to such transaction (or series of transactions) that they have determined that the transaction or transactions have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined in the sole discretion of the Office and NSD, the Defendants agree that such transaction or transactions will not be consummated.  In addition, if at any time during the Term of the Agreement, the Office and NSD determine in their sole discretion that the Defendants have engaged in a transaction or transactions that have the effect of circumventing or frustrating the enforcement purposes of this Agreement, they may deem them a breach of this Agreement pursuant to Paragraphs 31 through 34 of this Agreement.  Nothing herein shall restrict the Defendants from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties

8

or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Office and NSD. Notwithstanding the provisions of this paragraph, it is expressly agreed that (a) without further notice to, or consent by, the Office or NSD, LCS may be fully dissolved as a corporate entity, and (b) Holcim is permitted to transfer assets between and among its subsidiaries, including Lafarge, provided that such transfers do not violate or frustrate the purposes of this Agreement, including but not limited to the obligations undertaken by Lafarge in Attachment B.

14.    The Defendants shall, subject to applicable law and regulations, cooperate fully with the Office and NSD in any and all matters relating to the conduct described in the Agreement and the Statement of Facts and other related conduct under investigation by the Office, NSD or any other component of the Department of Justice at any time until the later of (a) the end of the Term, or (b) with respect to cooperation related to an ongoing prosecution, the date upon which all prosecutions arising out of such conduct are concluded.  At the request of the Office or NSD, the Defendants shall also cooperate fully with other domestic law enforcement and regulatory authorities and agencies in any investigation of the Defendants, their affiliates or any of their present or former officers, directors, employees, agents and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the Statement of Facts and any other related conduct under investigation by the Office, NSD or any other component of the Department of Justice.  The Defendants' cooperation pursuant to this paragraph is subject to applicable laws and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine.  However, the Defendants must provide to the Office and NSD a log of any information or cooperation that is not provided based on an

9

assertion of law, regulation or privilege, and the Defendants bear the burden of establishing the validity of any such assertion. The Defendants agree that their cooperation pursuant to this paragraph shall include, but not be limited to, the following:

a. The Defendants shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or work product doctrine with respect to their activities, those of their subsidiaries, and those of their present and former directors, officers, employees, agents and consultants, including any evidence or allegations and internal or external investigations, about which the Defendants have any knowledge or about which the Office or NSD may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Defendants to provide to the Office and NSD, upon request, any document, record or other tangible evidence about which the Office or NSD may inquire.

b. Upon request of the Office or NSD, the Defendants shall designate knowledgeable employees, agents or attorneys to provide to the Office and NSD the information and materials described in Paragraph 14(a) above on behalf of the Defendants. It is further understood that the Defendants must always provide complete, truthful and accurate information.

c. The Defendants shall use their best efforts to make available for interviews or testimony in any criminal or civil case involving the Office or NSD, as requested by the Office or NSD, present or former officers, directors, employees, agents and consultants of the Defendants. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with law enforcement and regulatory authorities. Cooperation under this paragraph shall include identification of witnesses who, to

10

the knowledge of the Defendants, may have material information regarding the matters under investigation.

d.       With respect to any information, testimony, documents, records or other tangible evidence provided to the Office or NSD pursuant to this Agreement, the Defendants consent to any and all disclosures, subject to applicable law and regulations, to other governmental authorities, including United States authorities and those of a foreign government, of such materials as the Office or NSD, in their sole discretion, shall deem appropriate.

e.       The Defendants shall not, without the prior written consent of the Office and NSD, move the Court for early termination of their term of Probation under 18 U.S.C. § 3564(c).

15.       In addition to the obligations in Paragraph 14, during the Term, should the Defendants learn of any evidence of conduct by the Defendants or by their joint ventures, subsidiaries, employees, agents, contractors or subcontractors, other than the conduct described in the Agreement, the Information and the Statement of Facts, that may constitute a violation of 18 U.S.C. § 2339B or other applicable U.S. anti-terrorism laws, the Defendants shall promptly report such evidence or allegation to the Office and NSD.  Thirty days prior to the end of the Term, the Defendants, by the Chair of the Board, will certify, in the form of executing the document attached as Attachment E to this Agreement, to the Office and NSD that the Defendants have met their disclosure obligations pursuant to this paragraph.  Each certification will be deemed a material statement and representation by the Defendants to the executive

11

branch of the United States for the purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

16.    The Defendants agree that the fine that will be imposed by the Court will be due and payable as specified in Paragraph 30(a) below, that the Forfeiture Money Judgment due under the Order of Forfeiture that will be imposed by the Court will be due and payable as specified in Paragraphs 22 through 28.  The Defendants further agree that each Defendant will pay to the Clerk of the Court for the United States District Court for the Eastern District of New York the mandatory special assessment of $400 (pursuant to 18 U.S.C. § 3013(a)(2)(B)) within 10 business days of the date of sentencing.

THE UNITED STATES' AGREEMENT

17.    In exchange for the guilty pleas of the Defendants and the complete fulfillment of all their obligations under this Agreement, the Office and NSD agree that they will not file additional criminal charges against the Defendants or any of their direct or indirect parents, corporate affiliates or subsidiaries relating to any of the conduct described in this Agreement, the Information or the Statement of Facts.  The Office and NSD may, however, use any information related to the above-referenced conduct against the Defendants: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.  This Agreement does not provide any protection against prosecution for any future conduct by the Defendants or any of their direct or indirect parents or subsidiaries.  In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Defendants.  The Defendants agree that nothing in this

Agreement is intended to release the Defendants from any of the Defendants' tax liabilities and reporting obligations for any and all income not properly reported and/or legally or illegally obtained or derived.

## FACTUAL BASIS

18.    The Defendants are pleading guilty because they are guilty of the charge contained in the Information.  The Defendants admit, agree and stipulate that the factual allegations set forth in the Information and the Statement of Facts are true and correct, that they are responsible for the acts of their officers, directors, employees and agents described in the Information and the Statement of Facts, and that the Information and the Statement of Facts accurately reflect the Defendants' criminal conduct.

## THE DEFENDANTS' WAIVER OF RIGHTS, INCLUDING THE RIGHT TO APPEAL

19.    Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made during plea proceedings or plea discussions in both civil and criminal proceedings if the guilty plea is later withdrawn.  The Defendants expressly warrant that they have discussed these rules with their counsel and understand them. Solely to the extent set forth below, the Defendants voluntarily waive and give up the rights enumerated in Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410.  The Defendants agree that, effective as of the date the Defendants sign this Agreement, they will not dispute the Statement of Facts set forth in this Agreement, and that the Statement of Facts shall be admissible against the Defendants in any criminal or civil case in which the Office or NSD is a party, as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing hearing or other hearing.  The Defendants also agree not to assert in

13

any such proceeding any claim under the Federal Rules of Evidence (including Rule 410 of the Federal Rules of Evidence), the Federal Rules of Criminal Procedure (including Rule 11 of the Federal Rules of Criminal Procedure) or the United States Sentencing Guidelines (including U.S.S.G. § 1B1.1(a)) that the Statement of Facts set forth in this Agreement should be suppressed or is otherwise inadmissible as evidence in any form.  In addition, the Defendants agree not to contradict anything in the Statement of Facts at any such proceeding, or in any proceeding brought by a foreign law enforcement authority.  Specifically, the Defendants understand and agree that if, even though the Office and NSD have fulfilled all of their obligations under this Agreement and the Court has imposed the agreed-upon sentence, the Defendants nevertheless withdraw their guilty pleas, any statements that they make during their guilty pleas or in connection with the Agreement are admissible against them for any purpose in any such U.S. criminal or civil proceeding.  This Agreement does not prevent the Defendants from raising legal defenses and arguments in other proceedings, including objecting to the admission of the Statement of Facts, provided that the Defendants may not contradict the facts set forth in the Statement of Facts.

20.    The Defendants are satisfied that the Defendants' attorneys have rendered effective assistance of counsel.  The Defendants understand that by entering into this Agreement, the Defendants surrender certain rights as provided in this Agreement.  The Defendants understand that the rights of criminal defendants include the following:

a.    the right to plead not guilty and to persist in that plea;

b.    the right to a jury trial;

c.    the right to be represented by counsel—and if necessary to have the court appoint counsel—at trial and at every other stage of the proceedings;

14

d.    the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

e.    pursuant to Title 18, United States Code, Section 3742, the right to appeal the sentence imposed.

Nonetheless, the Defendants knowingly waive the right to appeal or collaterally attack the conviction and any sentence within the statutory maximum described below (or the way that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever except those specifically excluded in this paragraph, in exchange for the concessions made by the Office and NSD in this Agreement.  The Agreement does not affect the rights or obligations of the Office and NSD as set forth in Title 18, United States Code, Section 3742(b).  The Defendants also knowingly waive the right to bring any collateral attack challenging either their convictions or the sentences imposed in this case.  The Defendants hereby waive all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a.  The Defendants waive all defenses based on the statute of limitations and venue with respect to any prosecution related to the conduct described in the Information and the Statement of Facts, including any prosecution that is not time-barred on the date that this Agreement is signed, in the event that: (a) the conviction is later vacated for any reason; (b) the Defendants violate the Agreement; or (c) the pleas are later withdrawn, provided such prosecution is brought within one year of any such vacatur of conviction, violation of the

15

Agreement or withdrawal of plea plus the remaining time period of the statute of limitations as of the date when this Agreement is signed. The Office and NSD are free to take any position on appeal or any other post-judgment matter. The parties agree that any challenge to the Defendants' sentence that is not foreclosed by this paragraph will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the Defendants from raising a claim of ineffective assistance of counsel in an appropriate forum.

## PENALTY

21.    The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 2339B(a)(1), is: a fine equal to the greater of $500,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense (Title 18, United States Code, Sections 3571(c) and (d)); five years' probation (Title 18, United States Code, Section 3561(c)(1)); and a mandatory special assessment of $400 per count (Title 18, United States Code, Section 3013(a)(2)(B)). In this case, the parties agree that the gross pecuniary gain resulting from the offense is $80.54 million. Therefore, pursuant to 18 U.S.C. § 3571(d), the maximum fine that may be imposed on each of the Defendants is twice the gross pecuniary gain, or $161.08 million, per offense.

## FORFEITURE

22.    The Defendants acknowledge that they had or have property that is subject to forfeiture as a result of their violations of 18 U.S.C. § 2339B(a)(1), as alleged in the Information. The Defendants consent to the entry of a forfeiture money judgment in the amount of six hundred eighty-seven million dollars and zero cents ($687,000,000.00) (the "Forfeiture Money Judgment"). The Defendants agree that the amount of the Forfeiture Money Judgment

16

and any payments toward the Forfeiture Money Judgment represent one or more of the following: (a) property, real and/or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense; (b) assets, foreign and/or domestic, of any person, entity or organization engaged in planning or perpetuating any Federal crime of terrorism (as defined in 18 U.S.C. § 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property, and assets, foreign and/or domestic, affording any person a source of influence over any such entity or organization; (c) assets, foreign and/or domestic, acquired or maintained by any person, entity, or organization with the intent and for the purpose of supporting, planning, conducting or concealing any Federal crime of terrorism (as defined in 18 U.S.C. § 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property; (d) assets, foreign and/or domestic, derived from, involved in, or used or intended to be used to commit any Federal crime of terrorism (as defined in 18 U.S.C. § 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property; (e) assets, foreign and/or domestic, of any person, entity or organization engaged in planning or perpetuating any act of international terrorism (as defined in 18 U.S.C. § 2331) against any international organization (as defined in 18 U.S.C. § 4309(b)) or against any foreign Government; and/or (f) substitute assets as defined in 21 U.S.C. § 853(p), and thus are forfeitable to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 981(a)(1)(G), 21 U.S.C. § 853(p) and 28 U.S.C. § 2461(c), in any administrative and/or judicial (civil or criminal) proceeding(s) at the Office's exclusive discretion.  The Defendants consent to the entry of an Order of Forfeiture,

pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, imposing the Forfeiture Money Judgment.

23.    The Forfeiture Money Judgment shall be paid in full on or before November 14, 2022 (the "Due Date"). All payments made by the Defendants toward the Forfeiture Money Judgment shall be made by wire transfer, money order, certified check and/or official bank check, payable to the "U.S. Marshals Service." Payment(s) made by wire transfer shall be made pursuant to written instructions provided by the Office. All other payment(s) shall be sent by overnight mail delivery to Assistant United States Attorney Artemis Lekakis, United States Attorney's Office, Eastern District of New York, 271-A Cadman Plaza East, Brooklyn, New York 11201, with the criminal docket number noted on the face of the instrument. The Defendants consent to the restraint of all payments made toward the Forfeiture Money Judgment. The Defendants also waive all statutory deadlines, including but not limited to deadlines set forth in 18 U.S.C. § 983. Each of the Defendants shall be jointly and severally liable for the full amount of the Forfeiture Money Judgment.

24.    If the Defendants fail to pay any portion of the Forfeiture Money Judgment on or before the Due Date, the Defendants consent to the forfeiture of any other property of theirs up to the amount of the unpaid Forfeiture Money Judgment, pursuant to 21 U.S.C. § 853(p), and further agree that the conditions of 21 U.S.C. §§ 853(p)(1)(A)-(E) have been met.

25.    The Defendants agree to fully assist the government in effectuating the payment of the Forfeiture Money Judgment by, among other things, executing any documents necessary to effectuate payment and transfer of title to the United States. The Defendants agree not to file a claim or petition seeking remission or contesting the forfeiture of any property

18

against which the government seeks to satisfy the Forfeiture Money Judgment in any administrative or judicial (civil or criminal) proceeding. The Defendants further agree not to assist any person, organization or entity in the filing of any claim or petition seeking remission or contesting the forfeiture of any property against which the government seeks to satisfy the Forfeiture Money Judgment in any administrative or judicial (civil or criminal) forfeiture proceeding.

26.    The failure of the Defendants to forfeit the Forfeiture Money Judgment as required under this Agreement, including the failure of the Defendants to execute any document to accomplish the same on timely notice to do so, may constitute a material breach of this agreement. Upon such a breach, the Defendants will not be entitled to withdraw the plea, but the Office may bring additional criminal charges against the Defendants.

27.    The Defendants knowingly and voluntarily waive their right to any required notice concerning the forfeiture of the Forfeiture Money Judgment, including notice under 18 U.S.C. § 983 and notice set forth in an indictment or information. In addition, the Defendants knowingly and voluntarily waive their right, if any, to a jury trial on the forfeiture of the Forfeiture Money Judgment, and waive all constitutional, legal and equitable defenses to the forfeiture of the Forfeiture Money Judgment, including, but not limited to, any defenses based on principles of double jeopardy, the Ex Post Facto clause of the Constitution, any statute of limitations, venue or any defense under the Eighth Amendment, including a claim of excessive fines.

28.    The Defendants agree that the entry and payment of the Forfeiture Money Judgment are not to be considered payment of a fine, penalty, restitution loss amount or any income taxes that may be due, and shall survive bankruptcy.

19

SENTENCING

29.    The Defendants understand that, although imposition of a sentence in accordance with the United States Sentencing Guidelines is not mandatory, the Guidelines are advisory and the Court is required to consider any applicable Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case. The Office and NSD will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the Defendants, and such information may be used by the Court in determining the Defendants' sentences. See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). Because the Guidelines provision for 18 U.S.C. § 2339B is U.S.S.G. § 2M5.3 ("Providing Material Support or Resources to Designated Foreign Terrorist Organizations or Specially Designated Global Terrorists, or For a Terrorist Purpose"), which is not one of the enumerated offense Guidelines to which the organizational fine Guidelines apply under U.S.S.G. § 8C2.1, the parties agree that the provisions of 18 U.S.C. §§ 3553 and 3572 control the imposition of an appropriate sentence, pursuant to U.S.S.G. § 8C2.10. This Guidelines analysis is not binding on the Office, NSD, the Probation Department or the Court. If the Guidelines analysis advocated by the Office and NSD, or determined by the Probation Department or the Court, is, for any reason, including an error in this Agreement, different, the Defendants will not be entitled to withdraw the plea, and the government will not be deemed to have breached this Agreement. The Defendants also understand that if the Court accepts this Agreement, the Court is bound under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure to impose the sentence agreed upon by the parties in Paragraph 30.

30.    Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Office, NSD and the Defendants agree, based on the factors under 18 U.S.C. § 3553(a), that the following sentence represents the appropriate disposition of the case, and agree to jointly request that the Court, at a hearing to be scheduled at an agreed-upon time, impose the following sentence on the Defendants:

a.    Fine. Pursuant to 18 U.S.C. § 3571(d), the Office, NSD and the Defendants agree that the appropriate criminal fine is the amount of forty-five million, three-hundred-ninety thousand dollars and zero cents ($45,390,000.00) to be imposed on each of Defendant Lafarge and Defendant LCS. The Defendants agree that the total amount of the fines imposed on each of the Defendants, specifically ninety million, seven-hundred-eighty thousand dollars and zero cents ($90,780,000.00) (the "Total Criminal Fine"), will be due and payable by the Defendants on or before November 14, 2022.

b.    Forfeiture. Pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 981(a)(1)(G), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), the Defendants consent to the entry of an Order of Forfeiture requiring them to pay the Forfeiture Money Judgment of $687 million under the terms set forth at Paragraphs 22 through 28.

c.    No Reimbursement. The Defendants shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source regarding the fine or forfeiture amounts that Defendants pay pursuant to the Agreement. The Defendants further acknowledge that no tax deduction may be sought in connection with the payment of any part of this fine.

21

d.      Mandatory Special Assessment. The Defendants shall each pay to the Clerk of the Court for the United States District Court for the Eastern District of New York within 10 days of the date of sentencing the mandatory special assessment of $400.

e.      Probation. Pursuant to 18 U.S.C. § 3561(c)(1), the Office, NSD and the Defendants agree to request that the Court impose on the Defendants a term of three years' probation. The Office, NSD and the Defendants further agree that pursuant to 18 U.S.C. § 3563(b)(22) the following conditions of probation are appropriate in this case, and agree to request that the Court impose these conditions at sentencing: (1) the Defendants shall pay the Total Criminal Fine, the Forfeiture Money Judgment and their respective Mandatory Special Assessments as set forth in this Agreement; (2) the Defendants shall comply with all of the provisions of this Agreement, including without limitation the Defendants' obligations under Paragraphs 8, 9, 12, 13 and 35 of this Agreement, and with the cooperation provisions of Paragraphs 14 and 15 of this Agreement; and (3) pursuant to 18 U.S.C. § 3563(a)(1), the Defendants shall not commit any federal, state or local crimes during the term of probation.

f.      Rule 11(c)(1)(C). This Agreement is presented to the Court pursuant to Fed. R. Crim. P. 11(c)(1)(C). The Defendants understand that, if the Court rejects this Agreement, the Court must: (a) inform the parties that the Court rejects the Agreement; (b) advise the Defendants' counsel that the Court is not required to follow the Agreement and afford the Defendants the opportunity to withdraw their pleas; and (c) advise the Defendants that, if the plea is not withdrawn, the Court may dispose of the case less favorably toward the Defendants than the Agreement contemplated. The Defendants further understand that, if the Court refuses to accept any provision of this Agreement, no party shall be bound by the provisions of the Agreement.

22

g.    Waiver of Pre-Sentence Investigation Report. The Office, NSD and the Defendants waive the preparation of a Pre-Sentence Investigation Report ("PSR") and intend to seek a sentencing by the Court immediately following the Rule 11 hearing in the absence of a PSR. The Defendants understand that whether to proceed with the sentencing proceeding without a PSR is exclusively the decision of the Court. In the event the Court directs the preparation of a PSR, the Office and NSD will fully inform the preparer of the PSR and the Court of the facts and law related to the Defendants' case.

BREACH OF AGREEMENT

31.    If the Defendants (a) commit any felony under U.S. federal law; (b) provide in connection with this Agreement deliberately false, incomplete or misleading information; (c) fail to pay the Total Criminal Penalty, Forfeiture Money Judgment or Mandatory Special Assessments; (d) make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Defendants set forth above or the facts described in the Information and the Statement of Facts in violation of Paragraph 35 of this Agreement; (e) fail to cooperate as set forth in Paragraphs 14 and 15 of this Agreement; (f) fail to implement a compliance program and report to the Office and NSD as set forth in Paragraphs 8, 9, 12 and 13 of this Agreement and Attachment C and Attachment D to this Agreement; (g) commit any acts that, had they occurred within the jurisdictional reach of 18 U.S.C. § 2339B, would be a violation of 18 U.S.C. § 2339B; or (h) otherwise fail specifically to perform or to fulfill completely each of the Defendants' obligations under the Agreement, regardless of whether the Office and NSD become aware of such a breach after the Term, the Defendants shall thereafter be subject to prosecution for any federal criminal violation of which the Office or NSD has knowledge, which may be pursued by the Office, NSD or any other component of the

23

Department of Justice. Determination of whether the Defendants have breached the Agreement and whether to pursue prosecution of the Defendants shall be in the Office's and NSD's sole discretion. Any such prosecution may be premised on information provided by the Defendants or their personnel. Any such prosecution relating to the conduct described in the Information and the attached Statement of Facts or relating to conduct known to the Office or NSD prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Defendants, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term of the Agreement plus one year. Thus, by signing this Agreement, the Defendants agree that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term of the Agreement plus one year. The Defendants give up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution or action, except to the extent that such defenses existed as of the date of the signing of this Agreement. In addition, the Defendants agree that the statute of limitations as to any violation of federal law that occurs during the term of the cooperation obligations provided for in Paragraphs 14 and 15 of the Agreement will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Office and NSD are made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

32.     In the event the Office and NSD determine that the Defendants have breached this Agreement, the Office and NSD agree to provide the Defendants written notice of such breach prior to instituting any prosecution resulting from such breach. Within 30 days of

24

receipt of such notice, the Defendants shall have the opportunity to respond to the Office and NSD in writing to explain the nature and circumstances of such breach, as well as the actions the Defendants have taken to address and remediate the breach, which explanation the Office and NSD shall consider in determining whether to pursue prosecution of the Defendants.

33.    If the Office and NSD determine that the Defendants have breached this Agreement: (a) all statements made by or on behalf of the Defendants to the Office, NSD or the Court, including the Information and the Statement of Facts, and any testimony given by the Defendants before a grand jury, a court or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Office and NSD against the Defendants; and (b) the Defendants shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence or any other federal rule that any such statements or testimony made by or on behalf of the Defendants prior or subsequent to entering this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision as to whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Defendants, will be imputed to the Defendants for the purpose of determining whether the Defendants have violated any provision of this Agreement shall be in the sole discretion of the Office and NSD.

34.    The Defendants acknowledge that the Office and NSD have made no representations, assurances or promises concerning what sentence may be imposed by the Court if the Defendants breach this Agreement. The Defendants further acknowledge that any such

sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

PUBLIC STATEMENTS BY THE DEFENDANTS

35.    The Defendants expressly agree that they shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Defendants, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Defendants set forth above or the facts described in the Information and the Statement of Facts. Any such contradictory statement shall, subject to cure rights of the Defendants described below, constitute a breach of this Agreement, and the Defendants thereafter shall be subject to prosecution as set forth in Paragraphs 31 to 34 of this Agreement. The decision as to whether any public statement by any such person contradicting a fact contained in the Information or the Statement of Facts will be imputed to the Defendants for the purpose of determining whether they have breached this Agreement shall be at the sole discretion of the Office and NSD. If the Office and NSD determine that a public statement by any such person contradicts in whole or in part a statement contained in the Information or the Statement of Facts, the Office and NSD shall so notify the Defendants, and the Defendants may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification. As set forth in Paragraph 19, the Defendants shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the facts set forth in the Information and the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Information or the Statement of Facts. This paragraph does not apply to any statement made by any present or former officer, director, employee or agent of the Defendants in his or her personal capacity in the course of any criminal,

26

regulatory or civil case initiated against such individual, unless such individual is speaking on behalf of one or both Defendants.

36.     The Defendants agree that if they, their parents, or any of their direct or indirect subsidiaries or affiliates over which the Defendants exercise control issues a press release or holds any press conference in connection with this Agreement, the Defendants shall first consult the Office and NSD to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate; and (b) whether the Office and NSD have any objection to the release or statement.

27

COMPLETE AGREEMENT

37.     This document, including its attachments, states the full extent of the Agreement.  There are no other promises or agreements, express or implied.  Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

AGREED:

**FOR LAFARGE S.A.:**

Date: 10. 18. 2022                     By: _____
                                                Magali Anderson
                                                Chair, Board of Directors and
                                                Chief Executive Officer
                                                Lafarge S.A.

Date: 10 . 18 . 22                       By:     _____
                                                Mary Jo White
                                                David Sarratt
                                                Douglas S. Zolkind
                                                Debevoise & Plimpton LLP
                                                Counsel for Lafarge S.A.


**FOR LAFARGE CEMENT SYRIA S.A.:**

Date: 10. 18. 2022                     By:     _____
                                                Magali Anderson
                                                on behalf of Lafarge Cement Syria S.A.

Date: 10·18·22                          By:     _____
                                                Mary Jo White
                                                David Sarratt
                                                Douglas S. Zolkind
                                                Debevoise & Plimpton LLP
                                                Counsel for Lafarge S.A.

28

**FOR THE U.S. DEPARTMENT OF JUSTICE:**

BREON PEACE
United States Attorney
Eastern District of New York

MATTHEW G. OLSEN
Assistant Attorney General
National Security Division

_____
Allon Lifshitz
Alexander A. Solomon
Ian C. Richardson
Joshua Hafetz
Assistant United States Attorneys

_____
Matthew Blue
Chief, Counterterrorism Section
National Security Division

Date: ___10 / 18 / 2022___

29

## COMPANY OFFICER'S CERTIFICATE

I have read the plea agreement among Lafarge S.A. and Lafarge Cement Syria S.A. (the "Defendants") and the United States of America, by and through the United States Attorney's Office for the Eastern District of New York and the United States Department of Justice, National Security Division (the "Agreement") and carefully reviewed every part of it with outside counsel for the applicable Defendant. I understand the terms of the Agreement and voluntarily agree, on behalf of the applicable Defendant, to its terms. Before signing the Agreement, I consulted outside counsel for the applicable Defendant. Counsel fully advised me of the rights of the Defendants, of possible defenses, of the United States Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of the Agreement with the Board of Directors of Lafarge. I have advised and caused outside counsel to advise the Board of Directors of Lafarge fully of the rights of the Defendants, of possible defenses, of the United States Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in the Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing the Agreement on behalf of the applicable Defendant, in any way to enter into the Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that

I am the Chair of the Board of Directors and Chief Executive Officer of Lafarge S.A., and that I have been duly authorized by the applicable Defendant to execute the Agreement on behalf of the applicable Defendant.

Date: 10.18.2022

        LAFARGE S.A.

By:

        Magali Anderson
        Chair, Board of Directors and
        Chief Executive Officer
        Lafarge S.A.

        LAFARGE CEMENT SYRIA S.A.

By:

        Magali Anderson
        on behalf of Lafarge Cement Syria S.A.

## CERTIFICATE OF COUNSEL

I am counsel for Lafarge S.A. and Lafarge Cement Syria S.A. (the "Defendants") in the matter covered by the plea agreement between the Defendants and the United States of America, by and through the United States Attorney's Office for the Eastern District of New York and the United States Department of Justice, National Security Division (the "Agreement"). In connection with such representation, I have examined relevant documents and have discussed the terms of the Agreement with the Board of Directors of Lafarge. Based on our review of the foregoing materials and discussions, I am of the opinion that the representatives of the Defendants have been duly authorized to enter into the Agreement on behalf of Lafarge S.A., and acting on behalf of its subsidiary Lafarge Cement Syria S.A., and that the Agreement has been duly and validly authorized, executed and delivered on behalf of the Defendants as set forth in Attachment B hereto, and is a valid and binding obligation of the Defendants. Further, I have carefully reviewed the terms of the Agreement with the Board of Directors of Lafarge. I have fully advised them of the rights of the Defendants, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement. To my knowledge, the decision of the Defendants to enter into the Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: _10·18·22_                    By: _____

                                        Mary Jo White
                                        David Sarratt
                                        Douglas S. Zolkind
                                        Debevoise & Plimpton LLP
                                        Counsel for Lafarge S.A.